IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION NO. |
| | : | 1:12-CR-256-RWS-JSA |
| ELOY GUTIERREZ-MARTINEZ | : | |
| RICARDO GUTIERREZ | : | |

## REPORT AND RECOMMENDATION

On September 20, 2012, Defendant Eloy Gutierrez-Martinez filed a Motion to Suppress Evidence Seized Without A Warrant [29], and a Motion to Suppress Evidence Seized With A Warrant [30]. On October 19, 2012, Defendant Ricardo Gutierrez filed a Motion to Adopt the motions filed by Defendant Eloy Gutierrez-Martinez [39]. On October 22, 2012, Defendant Eloy Gutierrez-Martinez supplemented and clarified the grounds by which he was seeking suppression of evidence seized with a warrant, by filing a Motion to Suppress Evidence Seized From Search of Home Based Upon Material Omissions and False Statements In Search Warrant [40].

The Court held a pre-trial conference and evidentiary hearing on the motions to suppress on October 22, 2012 [41]. At this hearing the Court granted Defendant Gutierrez's Motion to Adopt and denied certain other pre-trial motions. [42]. The Court took the motions to suppress [29][30][40] under advisement and ordered a

briefing schedule by which the parties could perfect and present their arguments for and against suppression. [41]. After various extensions, Defendants' briefs in support of their motions to suppress were ultimately due on March 11, 2013. No briefs were filed.

The Court considers the Defendants' failures to file briefs in support of their pending motions [29] [30] and [40] as indicating that they withdraw the motions. Nevertheless, the Court has reviewed the record and concludes that the motions are meritless and should be denied. Thus, both because of the Defendants' apparent withdrawal of these motions, and also independently because the motions lack merit, the Court **RECOMMENDS** that Defendants' motions to suppress [29], [30] and [40] be denied.

## BACKGROUND

On August 14, 2012, Defendants Gutierrez-Martinez and Gutierrez, along with a third Defendant, were charged in a three count Indictment that alleged various crimes in connection with a robbery attempt on July 25, 2012. [11-1]. Count One alleges that the Defendants attempted to commit the offense of robbery, in violation of the Hobbs Act, 18 U.S.C. § 1951; Count Two alleges that, on the same day, the Defendants possessed with intent to distribute a certain amount of methamphetamine, in violation of 21 U.S.C. 846 and 841; and Count Three alleges that the Defendants

committed the offense in Count One (that is, attempted robbery) in furtherance of a drug transaction (that is, the same crime charged in Count Two), which was allegedly an independent crime in violation of 18 U.S.C. § 924(c)(1)(A). [11-1].

At the evidentiary hearing, the United States called Special Agent Stuart Reagan, U.S. Department of Homeland Security, Immigration and Customs Enforcement, to testify. Transcript ("Tr.") [43] at 13. No other witnesses were called by any party. *Id.* at 34. Agent Reagan explained that the events of July 25, 2012 that led to the arrests in this case began with certain conversations between Defendant Eloy-Gutierrez and a confidential informant ("CI"). *Id.* at 14-15. Some, but not all, of the conversations between the CI and Defendant Eloy-Gutierrez were monitored by the agents and recorded. *Id.*

The CI and Defendant Eloy-Gutierrez knew each other previously through gang membership ties, and their initial conversation concerned opportunities to make money by robbing potential drug dealer targets. *Id.* at 15. Defendant Eloy-Gutierrez initiated the idea to rob drug dealers and he made comments that the agents were able to monitor that indicated he had engaged in such crimes previously. *Id.*

The agents, using the assistance of the CI, then engineered a "fake drug rip off." *Id.* at 16. The CI led Defendant Eloy-Gutierrez to believe that the CI knew the address of a drug dealer and knew when the dealer would have a large amount of currency,

valuables or contraband at that location. *Id.* Under supervision of the agents, the CI provided some identity information and general location of a target drug dealer. *Id.* The information was designed to be familiar to the Defendant, based on "general knowledge of people operating in that realm, gang members, drug dealers." *Id.* at 16-17. The Defendant and the CI decided on July 25, 2012 as the day to commit the robbery, and the agents were able to hear and record conversations between the two about "what proceeds they might get, methods of tying people up, how to or what armaments they might need to perpetrate the robbery," and the like. *Id.* at 17. The Defendant was the one "driving the conversation" about these topics. *Id.*

The Defendant met the CI at the Defendant's residence on July 25. *Id.* at 18-19. At the residence, Defendant Ricardo Gutierrez was present along with a juvenile. *Id.* After the group left the residence, on the way to the robbery location, they stopped at a mobile home park and picked up Co-Defendant Saldana. *Id.* The CI then drove the five individuals (all three Defendants, the CI, and a juvenile) in the CI's car to the robbery location that Defendant Eloy-Gutierrez and the CI had discussed, on Grant Road in North Clayton County. *Id.* at 19-20. The agents surveilled the car as it traveled. *Id.* at 21. The CI had surreptitiously sent the agent text messages warning the agent that the group in the car had firearms, and that Defendant Eloy-Gutierrez had

4

in fact been contacting individuals who had firearms to assist in the robbery.  *Id.* at 19-20.

As the CI's car neared, but before it reached, the fictional robbery location on Grant Road, the CI stopped the car at another location that had been pre-planned with the agents.  *Id.* at 21.  The CI used the excuse that the group should "get out and get ready, get masks, ties, weapons checked, things like that...."  *Id.*  At that point, a tactical team of agents approached and arrested the group.  *Id.*  The CI had already left the car, and the agents "arrested" him for show purposes.  *Id.* at 21-22.  All the others, including all three Defendants, were still in the car when the agents came and arrested them.  *Id.*

The car was then searched, and the agents found zip ties, masks, ammunition, and three firearms.  *Id.* at 22-23. These items were found in the car itself and not on any Defendant's person.  *Id.*  at 22.  Defendant Ricardo Gutierrez was searched incident to arrest and the agents found a knife and a bandana.  *Id.*  The other individuals were searched incident to arrest although the agent could not recall any specific items obtained from other Defendants.  *Id.* at 22-24.  The agent noted that Defendant Eloy-Gutierrez likely had personal effects, including a cell phone.  *Id.*

## DISCUSSION

### A.    The Suppression Motions Should Be Deemed Withdrawn And Denied On That Basis

As discussed above, Defendant Eloy-Gutierrez filed initial Motions to Suppress [29], [30] and [40] that alleged the existence of Fourth Amendment violations, and Defendant Gutierrez adopted those motions [42].  But after the evidentiary hearing at which the Defendants were able to discover the facts through testimony of the case agent, neither Defendant filed any post-hearing brief to perfect their motions on the schedule the Court imposed.  The Court has extended the deadline at Defendant Eloy-Gutierrez's request several times but still no supporting post-hearing brief has been filed by either Defendant.  The Court concludes that because Defendants have chosen not to perfect these motions, they are abandoning and withdrawing them.  *See United States v. Elder*, No. 1:10–CR–132–RWS/AJB, 2010 WL 5656687, at *3 (N.D.Ga. Dec.16, 2010) ("By failing to perfect the motion, the undersigned concludes that [defendant] abandoned his motion to suppress); *United States v. Rodriguez–Alejandro*, 664 F.Supp.2d 1320, 1327 n. 3 (N.D.Ga.2009) ("Defendant has not perfected the motion [to suppress], and it is deemed abandoned and withdrawn."); *United States v. Shorr*, No. 1:07–cr–182–1–TWT, 2008 WL 655994, at *1 (N.D.Ga. Mar.10, 2008)

(deeming preliminary motion to suppress abandoned because defendant failed to perfect the motion).[1]

Defendants may have decided to do so because, as explained below, the evidence adduced at the hearing fails to support the alleged Fourth Amendment violations.   In any event, the Court **RECOMMENDS** denial of all pending suppression motions, i.e., Documents 29, 30, and 40 as to Defendants Eloy-Gutierrez and Gutierrez, on grounds that the motions are  withdrawn.

**B.      Based On the Evidence In The Record, The Motions Are Meritless**

In addition to be subject to denial for having been withdrawn, the motions lack merit.

1.      Motion To Suppress Evidence Obtained Without A Warrant [29]

The motion filed by Defendant Eloy-Gutierrez, and adopted by Defendant Gutierrez, seeks to suppress the fruits of the warrantless searches conducted of their persons and/or of the car at the time of arrest. [29]  The evidence adduced at the

---

[1] On two prior occasions, Defendant Eloy-Gutierrez failed to file his post-hearing brief on dates ordered by the Court.  However, on both of those occasions, the Defendant subsequently filed motions to continue asking for additional time to file such a brief [44][49].  As of the date of this Report and Recommendation, which is more than one week after the due date for the post-hearing briefs as continued several times by the Court, Defendant has neither filed a brief nor another motion to continue requesting further time.

hearing shows that these searches were Constitutionally permissible and that this motion fails.

As to the searches of the Defendants' persons, it is well established that a full search incident to a lawful arrest is a permitted exception to the warrant requirement of the Fourth Amendment. *See United States v. Goddard,* 312 F.3d 1360, 1364 (11th Cir.2002). In other words, as along as the officers had probable cause to support the arrest, they were entitled to make a full search of each Defendant's person. *United States v. Robinson*, 414 U.S. 218 (1973).

The evidence shows that the agents in this case arrested Defendants, had probable cause to support those arrests, and then searched the Defendants incident to those justifiable arrests. As to probable cause, among other things, the agents monitored recorded conversations between the CI and Defendant Eloy-Gutierrez about a plan to rob a drug dealer. The plan was initiated by the Defendant. After the CI proposed a date and location and identified a particular proposed target, Defendant Eloy-Gutierrez discussed contacting others with firearms to assist in the robbery. On that day, the CI met Defendant Eloy-Gutierrez, Defendant Gutierrez, and others, and the CI reported to the agent that the crew was in possession of firearms. The agents surveilled all of this, and followed the car as it neared the location of the fictitious robbery. This provided more than enough basis to arrest the Defendants for attempt

to commit robbery.   Thus, the searches incident to those valid arrests were permissible.

The search of the car was permissible for the same reason.  When an occupant of an automobile is lawfully arrested the Fourth Amendment permits the arresting officers to contemporaneously conduct a warrantless search of the passenger compartment and any containers found therein. *See New York v. Belton*, 453 U.S. 454 (1981).  Here, the Defendants were arrested while still within the car and for that reason the so-called "automobile exception" to the warrant requirement applies.

Moreover, Defendants appear to lack standing to challenge the search of the car. Generally, mere passengers lack standing to challenge the search of a vehicle. *See Untied States v. Lee*, 586 F.3d 859, 864 (11th Cir. 2009).  As noted above, the CI was the driver, and the car was his.  The others appear to lack any standing.[2]

_____

[2] Relatedly, the CI, as the owner and driver of the car, had authority to consent to a search of the car.  As he was actively working with the agents the only logical inference is that the agents had his consent to search the vehicle.

Defendant Eloy-Gutierrez's counsel stated at the hearing that she was not alleging that the Defendant had standing to allege a privacy interest in the car.  Rather, counsel argued that "I'm challenging the stop on the car and the items recovered for Mr. Eloy Gutierrez."  While a passenger may challenge an illegal seizure of the car in which he was traveling, that is inapplicable here.  First, as explained above, the agents had probable cause to stop the car and arrest the Defendants.  Second, the evidence did not show that the agents actually stopped the car.  The testimony was that the CI stopped the car near the fictitious robbery site based on a fabricated story about how the robbers should take a moment to check weapons, don masks, and so forth.

For these reasons, the Motion to Suppress Evidence Obtained Without A Warrant [29] fails as to both Defendants.

**B.      Motion To Suppress Evidence Obtained With A Warrant**

Defendant Eloy-Gutierrez filed a motion seeking to suppress the fruits of a search of his residence, apparently conducted after the arrests. [30].  Defendant Eloy-Gutierrez filed a subsequent Motion [40] to Suppress Evidence Seized from Home Based Upon Material Omissions and False Statements in Search Warrant.  The Court understands the second Motion, i.e., Document 40, supersedes Document 30. Regardless, as discussed below, the motions fail.

Defendant Eloy-Gutierrez alleges that the agents made material misrepresentations to the Court in applying for a warrant to search his residence. [40] at 1.  Defendant alleges that, in the warrant application, the agents stated that they knew the CI obtained drugs from the residence on certain occasions, in part because they were able to search the informant immediately before and after he was inside the house, and confirmed that the CI only possessed drugs after having left the residence. *Id.* at 1-2.  Defendant alleges that these statements were false, because according to subsequent investigative memoranda, the CI in fact "visited several locations" with Defendant before returning to surrender the drugs to the agents.  *Id.*  These facts,

10

Defendant suggests, undermine the probable cause to search the residence because they would have increased the possibility that the CI obtained the drugs elsewhere.

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court made clear that a search warrant predicated on misrepresentations made knowingly or intentionally or with reckless disregard for the truth is not valid. However, it is the Defendant's burden to make at least a substantial preliminary showing of such a violation, and insignificant or immaterial misrepresentations or omissions will not invalidate a warrant. *See United States v. Reid*, 69 F.3d 1109 (11th Cir. 1998); *United States v. Cross*, 928 F.2d 1030 (11th Cir. 1991). In other words, even if a defendant demonstrates the existence of misrepresentations, no suppression is warranted if probable cause existed to support the proposed search even after excising the false information from the warrant application. *See Cross*, 928 F.2d at 1030.

In this case, the record is devoid of any evidence suggesting that a misrepresentation was made. Defendant's Motion makes allegations, but the record does not include the warrant application or any investigative memoranda, testimony or other evidence showing a discrepancy. The Motion fails for this reason alone. Moreover, although the undersigned does not know what facts were included in the warrant application, the record shows substantial independent evidence of probable cause. The agents arrested Defendant Eloy-Gutierrez in the course of an attempted

robbery, and discovered firearms, ammunition, ties and masks in the car.  The agents had monitored certain communications about the robbery between the Defendant and the CI.  And the agents observed the Defendant, the CI, Co-Defendant Gutierrez, and a juvenile using the Defendant's residence as the meeting point immediately prior to embarking on the attempted robbery.  Based on the evidence in the record, the Court finds no merit in Defendant's motions to suppress the fruits of the search warrant, i.e., Documents 30 and 40.[3]

## CONCLUSION

For the reasons explained above, the undersigned **RECOMMENDS** that the pending motions to suppress, Documents 29, 30 and 40, be **DENIED**.

This case is **READY FOR TRIAL**.

**IT IS SO RECOMMENDED** this 22nd day of March, 2013.

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

---

[3] Defendant Gutierrez's Motion to Adopt [39], which was granted by the Court [42], purports to adopt these motions to suppress the fruits of the search warrant executed at Defendant Eloy-Gutierrez's residence.  The motions are meritless as to Defendant Gutierrez for the additional reason that the evidence in the record fails to establish any standing he may have to challenge the search in Defendant Eloy-Gutierrez's residence.